# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 13-21928-CIV-KING

THE SIEGER SUAREZ ARCHITECTURAL
PARTNERSHIP, INC., *a Florida
corporation*,

     Plaintiff,

v.

ARQUITECTONICA INTERNATIONAL
CORPORATION, *a Florida corporation*,
REGALIA BEACH DEVELOPERS, LLC,
*a Florida limited liability corporation*, GOLDEN
BEACH DEVELOPERS, LLC, *a Florida limited
liability corporation*, REGALIA HOLDINGS,
LLC, *a Florida limited liability corporation*,
PAUL MURPHY, *an individual*, and
LUIS MONTELLO, *an individual*,

     Defendants.

_____/

## ORDER DISMISSING CASE WITH PREJUDICE

THIS CAUSE comes before the Court upon Defendant Arquitectonica's Motion to Dismiss the Amended Complaint (D.E. 81). Upon review of the record and careful consideration, the Court finds that the Motion should be granted and the case be dismissed with prejudice.

## I. BACKGROUND OF THE CASE

"Architecture starts when you carefully put two bricks together.  There it begins."[1] Two prominent South Florida architecture firms created their own visions for putting bricks together to form a condominium building in Sunny Isles Beach, Florida.  The vision of one of those firms, Arquitectonica International ("Arquitectonica"), came to fruition in the construction of the building now known as Regalia.  The other firm, The Sieger Suarez Architectural Partnership ("Sieger Suarez"), brings the instant action alleging that Arquitectonica's plan infringes upon Sieger Suarez's copyright on plans it developed and further alleging that various developers and their principals also infringed on Sieger Suarez's copyright and contributed to and profited from Arquitectonica's infringement.

Much like the construction of a building, this case has numerous pieces, all relying on and related to each other.  The foundation is Defendant Arquitectonica's alleged infringement on Plaintiff Sieger Suarez's plans.  Without that foundational infringement, the case will crumble.

This case was filed on May 31, 2013. D.E. 1.  Count I of the Amended Complaint alleges copyright infringement against Arquitectonica.  Counts II, IV, and VI allege contributory copyright infringement against Regalia Beach Developers, Regalia Holdings & Paul Murphy, and Golden Beach Developers, respectively.  Counts III, V, VII, and X allege vicarious copyright infringement against Regalia Beach Developers, Regalia Holdings & Paul Murphy, Golden Beach Developers, and Luis Montello, respectively.

---

[1] Attributed to Ludwig Mies van der Rohe (German-born, American architect 1886-1969).

Counts VIII and IX allege copyright infringement against Regalia Beach Developers and Golden Beach Developers, respectively.

Regalia Beach Developers (RBD) and Golden Beach Developers (GBD) have ownership interests in the project.[2] D.E. 72, ¶¶ 5, 6. Regalia Holdings is alleged to be a developer of the project and Paul Murphy is alleged to be its principal. *Id.*, ¶¶ 7, 8. Luis Montello is alleged to be a managing member of RBD, GBD, and Regalia Beach Holdings, LLC.[3] *Id.*, ¶¶ 9, 162, 163.

Upon the filing of the original Complaint, all Defendants filed Motions to Dismiss. After the Motions to Dismiss aimed at the original Complaint were fully briefed, Plaintiff moved for and was granted leave to file an Amended Complaint. D.E. 71. Now pending before the Court are Motions to Dismiss the Amended Complaint filed by Arquitectonica (D.E. 81); Regalia Holdings and Paul Murphy (D.E. 97); and GBD, RBD, and Luis Montello (D.E. 72).

The facts, as set forth in the Amended Complaint and taken as true for the purposes of a motion to dismiss are as follows. In August 2000, Plaintiff was hired by an entity, Mori Classics, to design plans for a building at 19505 Collins Avenue, Sunny Isles Beach, Florida. D.E. 72, ¶15. The project is now known as Regalia. In 2006, Plaintiff

---

[2] The relationship between Regalia Beach Developers and Golden Beach Developers is unclear. Paragraph 39 of the Amended Complaint alleges RBD is the successor in name to GBD, with new Articles of Organization filed in June, 2011. It is alleged that RBD purchased the project sometime between 2009 and 2010 but that in March 2011 GBD was assigned rights to the project. Nonetheless, the Court treats RBD and GBD as one related entity, as the parties so treat them in the Amended Complaint and the Motions to Dismiss.

[3] The entity Regalia Beach Holdings is not described. *See* D.E. 72, ¶ 9.

completed plans for the Regalia project, for which the United States Copyright Office issued copyrights on January 30, 2006 and July 25, 2006. *Id.*, ¶ 26; D.E. 72-5.

Defendant Murphy was later brought in as a new partner in the project. D.E. 72, ¶24. Defendant Murphy and another individual who is not party to this suit then replaced Plaintiff with Defendant Arquitectonica as the project's architect. *Id.* Sometime in 2006, Defendant Regalia Holdings also entered into an agreement with Defendant Arquitectonica for architectural work. *Id.*, ¶32.

After 2006, Plaintiff had no further involvement with the project. *Id.*, ¶30. However, in May 2006, one of Plaintiff's employees sent a copy of Plaintiff's plans to Defendant Arquitectonica. *Id.*, ¶29.   On July 20, 2006, Defendant Arquitectonica's counsel[4] sent Plaintiff a fax containing Arquitectonica's exterior renderings and floor plans for the Regalia project. *Id.*, ¶33.   Sometime between 2009 and 2010, Defendant RBD purchased the Regalia project. *Id.*, ¶37.   On or about March 22, 2011, Defendants GBD and Regalia Holdings were assigned, among other things, Arquitectonica's plans and the rights relating to the Regalia project. *Id.*, ¶38.

On October 26, 2011, Defendant Luis Montello, as manager of RBD, entered into an agreement with Arquitectonica for work on Regalia. *Id.*, ¶40.  Around February 2012, Plaintiff learned construction was underway on Regalia and that Defendant's allegedly-infringing plans were being used. *Id.*, ¶46.

---

[4] Counsel was representing a different client at the time it sent the fax.

Defendant Arquitectonica moves to dismiss the Amended Complaint as failing to state a viable cause of action under Fed. R. Civ. P. 12(b)(6) and as time-barred. The Court heard oral argument on this Motion on December 17, 2013. D.E. 117.

## II. LEGAL STANDARD: MOTION TO DISMISS

A complaint must contain short and plain statements of the grounds for the court's jurisdiction, of the cause of action, and of the relief sought. Fed. R. Civ. P. 8(a). Under the heightened pleading standards set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2010) and *Bell Atl. Corp. v. Twombley*, 550 U.S. 544 (2007), there must be "enough facts to state a claim to relief that is plausible on [the] face" of the complaint. *Twombley*, 550 U.S. at 570. A plaintiff must plead sufficient facts to show entitlement to relief and must plead "more than labels and conclusions. . . . A formulaic recitation of the elements of a cause of action will not do." *Id.*

In deciding a motion to dismiss, the Court must accept a complaint's well-pled allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such allegations must be construed in the light most favorable to the Plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). "In analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court may also consult documents that are attached to the motion to dismiss under the "incorporation by reference" doctrine. The Eleventh Circuit has defined the incorporation by reference doctrine to mean:

> [A] document attached to a motion to dismiss may be considered by the
> court without converting the motion into one for summary judgment only if
> the attached document is: (1) central to the plaintiff's claim; and (2)
> undisputed. . . . "Undisputed" in this context means that the authenticity of
> the document is not challenged.

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (internal citations omitted); *see*

*also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## III. COPYRIGHT INFRINGEMENT

### A. LEGAL STANDARD

Copyright infringement requires that a plaintiff owned a valid copyright and a

defendant copied constituent elements of the work that are original. *Feist Publ'ns, Inc. v.*

*Rural Tel. Serv. Co.*, 499 US 340, 361 (1990).  Here, there is no direct proof of copying.

In such a case, a plaintiff may establish copying by demonstrating that the defendant had

access to plaintiff's work and that the plaintiff's and defendant's works are substantially

similar. *Oravec v. Sunny Isles Luxury Ventures, L.C*, 527 F.3d 1218, 1223 (11th Cir.

2008) (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)).

#### i.    Protection of Architectural Works

The copyright infringement analysis is impacted by the fact that the works in

question are architectural designs.  Architectural works are protected under the Copyright

Act as a work of authorship and defined as, "the design of a building as embodied in any

tangible medium of expression, including a building, architectural plans, or drawings." 17

U.S.C § 101, 102(a)(8).

An architectural work does include "the overall form as well as the arrangement

and composition of spaces and elements in the design." 17 U.S.C. § 101; H.R.Rep. No.

101-735 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 6935, 6949.  However, "individual standard features" such as windows and doors, are excluded from the definition of "architectural work." *Id.*  The goal of this definition is to strike a balance between promoting the "progress of architectural innovation" and protecting an architect's creativity. *Id.*  Individual elements are ideas, which are not protectable, but the architect's combination and arrangement of those features may protectable. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1251 (11th Cir. 2007).

Architectural works have been deemed analogous to "compilations." *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008). "A 'compilation' is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.  Cases have interpreted this to mean that an architectural work is afforded "thin" or "minimal" protection. *Intervest*, 544 F.3d at 919 (citing *Feist*, 449 U.S. at 349); *Trek Leasing, Inc. v. United States*, 66 Fed. Cl. 8, 17 (Fed. Cl. 2005); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1379 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir. 2012); *Dream Custom Homes, Inc. v. Modern Day Constr., Inc.*, 733 F. Supp. 2d 1288, 1309 (M.D. Fla. 2011).

However, this interpretation mistakenly implies that an architectural work's copyright is somehow less strong than the protection afforded other copyrights.  The terminology leaves the impression that it is a trial judge's responsibility to decide whether some copyrights are entitled to full, "grownup," protection while others are

entitled to only minimal, "baby," protection. That is not, in actuality, the question before the Court. The question is: what does a copyright of an architectural work truly protect?

A more accurate term for the protection afforded an architectural work, in this Court's estimation, is "specific protection." Architectural works, and other compilations, have "specific copyright protection" in that the copyright protects the exact work itself; only subsequent works which copy the work's specific expressions and designs will infringe upon that protection. The precise expression in the plan which was submitted to the United States Copyright Office is the work which is protected. However, certain standard elements which do not comprise the expression are not protectable. For example, the Eleventh Circuit has held that there are a finite number of ways buildings such as condominiums, homes, and offices can be arranged and such arrangements are not protectable. *See Intervest*, 554 F.3d 914; *Howard v. Sterchi*, 974 F.2d 1272, 1276 (11th Cir. 1992). This must be the case because, to borrow a phrase used by the Ninth Circuit in a photography case, "the range of protectable expression" is limited by the fact that the work is architectural. *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).

A plaintiff cannot use copyright to control the right to unoriginal arrangements, and so the protection afforded architectural works must be specific. An architectural copyright is not "minimal" or "thin" because the copyright does protect what it was issued to protect, i.e. the plan submitted to the Copyright Office. A copyright of an architectural work is a full-fledged copyright which protects the specific expression embodied in the plan which was issued a copyright by the Copyright Office

### ii.    Substantial Similarity

The term "substantial similarity" has lived a shadowy life in the courts.  The Eleventh Circuit has defined substantial similarity as existing "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Orig. Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982) (internal quotations and citation omitted).  The Circuit later built upon this definition, holding that the question is whether a properly instructed jury could find the "competing designs substantially similar at the level of protected expression." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012) (internal quotations and citations omitted); *Intervest*, 554 F.3d at 921.

Only expressions are protectable, not ideas.  This concept is known as the "expression/idea dichotomy." *Oravec*, 527 F.3d at 1224. "The copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547, (1985).  Similarities between the works must be a "similarity of expression, i.e. material susceptible of copyright protection." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 n.4 (11th Cir. 1994).  Thus, where works contain similarities of only non-protectable elements, there can be no copyright infringement. *See, e.g., Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir.1988); *Trek Leasing*, 66 Fed. Cl. at 12.

The Eleventh Circuit, and others, have recognized the difficulty in distinguishing expression and ideas; "there is no bright line separating the ideas conveyed by a work from the specific expression of those ideas." *Intervest*, 554 F.3d at 920 (citing *Oravec*,

9

527 F.3d at 1224); *see also Beal*, 20 F.3d at 460; *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (Hand, J.). Cases typically analyze the issue on an ad hoc basis. *See, e.g.*, *Bldg. Graphics, Inc. v. Lennar Corp.*, 866 F. Supp. 2d 530, 543–45 (W.D.N.C. 2011); *Dream Custom Homes*, 733 F. Supp. 2d at 1304–09.

Upon a review of the case law across the circuits, this Court finds that the usual analysis of substantial similarity is too vague and the language misleading. In practice, the "average observer" referred to by the cases is not average at all. The law in this area, as evidenced by the length of analysis herein, is complex and the distinction between expression and idea can be a difficult one. As such, an "average" observer is one who is fully aware of the law, trained to understand the elements of infringement and protectable features, with knowledge of architectural designs, and with experience to decide the facts of a given case. Such a person is neither average nor ordinary.

Of course, such a high level of sophistication is neither what the Eleventh Circuit's wording implies nor what the law intends. To make the issue more manageable, this Court endeavors to illuminate the substantial similarity analysis in architectural copyright infringement actions. Emphasis must be placed on the protectable expression of an idea, not the idea itself. As the Eleventh Circuit has noted, "The substantial similarity required for infringement . . . must be substantial similarity of expression, not substantial similarity of ideas." *Orig. Appalachian*, 684 F.2d at 829 n.11.

Rather than simply continue down the oft-misleading road of ad hoc analysis, the Court will consider certain telling factors of substantial similarity and suggests that this non-exclusive and non-exhaustive list of guideposts should be used by future courts as

guideposts for determining the level of similarity between architectural works.  Copyright protection is intended to stimulate innovation, not to be so broad as to stifle creative efforts.  Given the enormity of variations of architectural works but the finite number of ways in which a building can be put together, the Court recognizes the need for a fluid test; if creativity is to be encouraged, flexibility must be emphasized.  However, without meaningful guidance the protection of a copyright may become meaningless, with findings of infringement becoming impossibly rare, or it may become too powerful, with findings of infringement becoming foregone conclusions.

Substantial similarity in an architectural work is a high standard; it revolves around the entirety of the specific work embodied in the copyright, but relies on the expression found in specific places, such as:[5]

*(1) The manner by which a design is achieved*

Two distinct architectural designs may create results that are visually similar without one infringing upon the other.  A copyright protects the manner by which the end result is created, not the appearance itself.  This is the essential distinction in the expression/idea dichotomy.  Two works which have similar outward appearances or shapes are not necessarily substantially similar.  Indeed, the Eleventh Circuit has "caution[ed] trial courts not to be swayed in an infringement action by the fact that two works embody similar or even identical ideas." *Orig. Appalachian*, 684 F.2d at 829 n.11. Factors to consider in determining how a design is achieved include if internal or external

---

[5] The Court is cognizant that the instant Motion is a Motion to Dismiss and some of the factors herein would be outside the scope of such a Motion.  The Court is suggesting guidance for consideration of substantial similarity generally, not specific to a motion to dismiss.

structures are used, if the structures used to achieve the design are part of the work's support system or are removable, and the importance of those structures in relation to the work as a whole.

*(2) Use of structures and details*

An architectural work's use of ornamental structures and details is integral to the work's expression of an idea.  Details such as what features adorn the exterior and interior of a work are avenues for an architect to express his vision for the work.  These features also make one building distinguishable from another.  These details provide the work with elements that others do not have and, thus, tend to establish the specific expression protected by a copyright.

*(3) How an individual interacts with the space*

The manner in which an individual interacts with a structure is a product of the copyrighted plans and affects the way a building is used.  For example, comparing the use and placement of entrances, walkways, doors, and elevators can reveal important differences in architectural expressions.  These features alter how much square footage there is for living space, how an individual relates to a room, and for what purpose the space is used.

*(4) Location*

A structure's location may be more determinative of the arrangement of elements, such as bedrooms, kitchens, and stairways, than an architect's originality.  For example, houses may be arranged in such a way as to have the bedroom windows face the prevailing winds, or particular views for rooms may be favored in certain areas.  Thus,

the general arrangement of a floor plan, which may be dictated in whole or in part by a structure's location, is not necessarily protectable.

## B. PROCEDURAL POSTURE

A key issue in this case is the propriety of making a determination of non-infringement at the Motion to Dismiss stage. This question was debated vigorously by the parties in their filings and at oral argument. Upon an analysis of the case law, the Court finds that, under the proper circumstances, it is appropriate for the Court to determine the issue of substantial similarity based on a Motion to Dismiss.

At the motion to dismiss stage, the Court looks only to the operative complaint and any documents referenced therein and integral to the issues. In the instant case, in order to apply the legal standard of copyright infringement, the Court is not required to go beyond any such documents. Indeed, Eleventh Circuit opinions concerning substantial similarity in architectural works have based their analysis upon a comparison of the works in question; no expert testimony or other evidence was relied upon. *See Miller's Ale House*, 702 F.3d 1312; *Intervest*, 554 F.3d 914; *Oravec* 527 F.3d 1218; *accord Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., et al.,* 602 F.3d 57, 64 (2d Cir. 2010) (courts evaluating substantial similarity need only consider a comparison of the works in question).

In ruling on the instant Motion, the Court relies on its own comparison of Plaintiff's plans (D.E. 72-1, 72-2, 72-3, 72-4) and Defendant Arquitectonica's plans (D.E. 81-5) and the side-by-side comparisons which Plaintiff attached to the Amended

Complaint (D.E. 72-8, 72-9).[6]  Plaintiff's plans are attached as exhibits to the Amended Complaint.  Defendant's plans are referenced in and central to the Amended Complaint as the plans which allegedly infringe on Plaintiff's copyright.  Defendant's plans are attached as an exhibit to the Motion to Dismiss.  No party has questioned the authenticity of this exhibit.  Accordingly, Defendant's plans are properly considered under the doctrine of incorporation by reference.  All the necessary evidence is, therefore, properly before the Court in the Amended Complaint and the Motion to Dismiss.

Out of "an abundance of caution," Defendant filed a Motion to Convert its Motion to Dismiss into a Motion for Summary Judgment. D.E. 120, ¶5.  If a complaint references documents central to a plaintiff's claim, "then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  Accordingly, the Motion to Convert is denied.

Considering the question at this stage may result in keeping the issue of substantial similarity from a jury.  Such a practice is permissible.  In an architecture case, the Second Circuit has held a district court can determine non-infringement as a matter of law at the Motion to Dismiss stage.  *Gaito,* 602 F.3d at 63–65 (when the works in question are attached to the complaint or incorporated therein, a court can consider similarity at a

---

[6] The Court notes that the plans Defendant attached to its Motion to Dismiss contain numerous differences from the comparisons attached to the Amended Complaint.  However, the comparisons Plaintiff attaches to the Amended Complaint are the comparisons which Plaintiff pleads and are the renderings which Plaintiff alleges show Defendant's infringement.  Thus, where there are discrepancies, the comparisons which Plaintiff attached control.

motion to dismiss "because the court has before it all that is necessary in order to make such a determination.").

Moreover, the Eleventh Circuit has held it is appropriate for a judge to decide substantial similarity in architecture cases. While the issue has, thus far, only been considered at the summary judgment stage in the Eleventh Circuit, the reasoning holds true for a motion to dismiss. In *Intervest*, 554 F.3d 914, the Eleventh Circuit upheld the district court's granting of summary judgment based on a finding that there was no substantial similarity between two home designs. The court, in explaining why a decision on substantial similarity is appropriate for summary judgment, articulated the importance of a judge's ruling on the matter:

> [T]he "substantial-similarity" test is more often correctly administered by a judge rather than a jury—even one provided proper instruction. The reason for this is plain—the ability to separate protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact.

554 F.3d at 920.

The Eleventh Circuit also upheld summary judgment decided on a lack of substantial similarity in *Oravec*, 527 F.3d 1218. There, the court upheld a judge's finding that no reasonable and properly instructed jury could find substantial similarity between two condominium designs.

In *Miller's Ale House*, 702 F.3d at 1312, the Eleventh Circuit again upheld summary judgment granted for plaintiff in a suit alleging, among other things, copyright infringement of a restaurant's name, décor, and floor plan. The court found, "Though disposing of a case at the summary judgment stage is inappropriate in certain kinds of

copyright infringement cases, we have approved of such treatment where the 'crucial issue' is substantial similarity." *Id.* at 1325 (quoting *Intervest*, 554 F.3d at 920).

Thus, Eleventh Circuit case law supports a trial court's ruling based on infringement at a motion to dismiss.  In the copyright context, the essential parallel between a motion to dismiss and a motion for summary judgment based on substantial similarity is that both motions seek to take a case away from a jury and place it in the judge's hands. *Miller's Ale House*, *Intervest*, and *Oravec* each uphold the propriety of a judge deciding substantial similarity. *Intervest* clearly establishes the judge's importance in the determination.  In the instant case, with no direct proof of copying, substantial similarity is the crucial issue.  Accordingly, in the Eleventh Circuit, it is appropriate for this Court to determine whether the works are substantially similar and, therefore, whether Plaintiff can plausibly demonstrate entitlement to relief, in connection with the instant Motion to Dismiss.

Other circuits have approved the practice of deciding the issue of substantial similarity upon a motion to dismiss in non-architecture cases. *See, e.g., Winstead v. Jackson*, 509 Fed. Appx. 139 (3d Cir. 2013) (affirming dismissal in action alleging infringement of a novel); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141 (8th Cir. 1989) (affirming dismissal in action alleging infringement of a song); *Taylor v. IBM*, 54 Fed. Appx. 794 (5th Cir. 2002) (per curiam) (affirming dismissal, finding term "pre-paid card" is not copyrightable); *Christianson v. W. Publ'g.  Co.*, 149 F.2d 202 (9th Cir. 1945) (affirming dismissal in action alleging infringement of a map); *Jacobsen v. Desert Book Co.*, 287 F.3d 936 (10th Cir. 2002) (reversing dismissal in action alleging infringement of

a memoir, but holding that a district court considering a 12(b)(6) motion determines the legal effect of the works by the works themselves and not allegations in the complaint).

## C. ANALYSIS

### i. Copyright Ownership

The Certificates of Registration ("Certificates") attached to the Amended Complaint indicate a valid copyright for Plaintiff's plans of the Regalia building, with Certificates issued by the United States Copyright Office on January 30, 2006 and July 25, 2006. D.E. 72-5. These Certificates are not conclusive evidence, but they "constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*, No. 12-14958, 2013 WL 6570072, at *4 (11th Cir. Dec. 16, 2013). "Once a plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that the work in which the copyright is claimed is unprotectable. . . ." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1233 (11th Cir. 2010) (internal quotation marks omitted). Although Defendant Arquitectonica writes that it reserves the right to challenge the validity of the copyright, it does not actually challenge the copyright here. Taking the Amended Complaint as true, the Court finds Plaintiff owns a valid copyright.

### ii. Access

Here, there is no proof of direct copying, so the analysis turns to Defendant's access to Plaintiff's plans and substantial similarity between Plaintiff's and Defendant's works. Plaintiff pleads that in May 2006 one of its employees sent a copy of its Regalia

plans, including AutoCAD plot files, to Defendant. D.E. 72, ¶29. Taking this allegation as true, access has been established.

### iii. Substantial Similarity

Using the guideposts outlined above, the Court finds the works are not substantially similar as a matter of law. Any relationship between Plaintiff's and Defendant's works is an intellectual one, not one of expression. Certain features which Plaintiff alleges to be evidence of copyright infringement are not protectable. For example, the number of condominium units per floor, the height of the building, and the height of the ceilings are not features over which Plaintiff, or anyone, could claim a valid copyright. *See* D.E. 72, ¶57.

The works in question are, certainly, conceptually similar. While not explicitly stated as such, Plaintiff's central grievance could be that Defendant may have used Plaintiff's work to bypass the need to make a totally independent creation of its own. Indeed, a comparison of the two works might suggest that Defendant was inspired by Plaintiff's work, drew on similar concepts, and even modeled its own unique structure after Plaintiff's design.

Even assuming, *arguendo*, that Defendant could never have developed its plans without first seeing Plaintiff's plans, Plaintiff is still unable to maintain this infringement action. The protectable elements, discussed below, are not substantially similar. Any similarity owing to Defendant's drawing inspiration from Plaintiff's work is not protectable. The time and effort Plaintiff invested in creating the plans and Defendant's

use of Plaintiff's plans as a shortcut, if such is the case, is insufficient to establish infringement. Copyright law does not require wholly independent creation.

Indeed, such an idea would echo the outdated "sweat of the brow" concept for copyright protection. Under that doctrine, copyright protection was "a reward for the hard work" of designers. *See Feist*, 449 U.S. at 352. The Supreme Court in *Feist* discussed the concept and legislative history of the Copyright Act of 1976 and rejected "sweat of the brow" as the standard for copyright protection. "Under the doctrine, the only defense to infringement was independent creation." *Id.* at 353. The Court found that this idea, "[w]ithout a doubt . . . flouted basic copyright principles." *Id.* at 354. "[C]opyright is not a tool by which a compilation author may keep others from using the facts or data he or she has collected." *Id.* at 359.

The substantial similarity analysis, therefore, must turn on the extent to which, if at all, the protectable elements are similar. The Court finds, as a matter of law, the protectable elements of Plaintiff's work have not been infringed upon by Defendant.

*(1) The manner by which the design is achieved*

    *a. Exterior Façade*

A striking aspect of both works is their creation of a distinctive visual impression through the shape of the buildings' exteriors. The Court will refer to the shape employed to create this impression as a "flower shape." Viewed from above, this shape is a stylized rectangle, with gently rounded corners and an outward bulge more-or-less in the center of each of the four sides. *See* D.E. 72-9. When facing any of the buildings' four sides, the façades create the impression of a wave rippling horizontally across the sides of the

buildings. *See* D.E. 72-8.  Upon considering the architectural renderings, the outward appearances of both designs are comparable; both designs are inspired by the flower shape and the idea of a wave-like façade.

However, each plan's expression of the shape and façade are very different.  The side-by-side comparisons reveal that the flower-shaped profile and wave-like façade of Defendant's design is achieved by the addition of wrap-around, irregularly-shaped balconies to an otherwise rectangular-shaped building.  These irregularly-shaped balconies combine, floor-by-floor, to create the impression of an oscillating wave running the entire height of the building.  Starting from the first balconied floor, Defendant's oscillating wave is achieved by shifting the center bulge of each successive floor's balcony just slightly to the side of the balcony beneath it.  These staggered balconies and the changing placement of the center bulges results in a dynamic wave across the façade of Defendant's building.

Plaintiff, on the other hand, achieves the outward appearance in a strikingly different manner.  Plaintiff's design is created by the addition of rounded corner balconies to an otherwise irregularly-shaped building with sharply rounded corners and an outward bulge at the center of each of its four sides.  Thus, the flower shape of the building is created by structural elements and bay windows that are integral to the design's floor plans, to which rounded corner balconies are added to complete the flower shape.  The bulging bay windows and rounded corner balconies appear in the same place on every floor and combine to create a smooth, static wave that runs the height of the building.

That Defendant's and Plaintiff's designs employ vastly different methods to express the flower shape, i.e. non-structural ornamental exterior terraces versus bay windows that are both structural and integral to the interior floor plan, is a critical distinction.  Moreover, the outward appearance and visual impression of the buildings, while inspired by the same shape, are clearly different.  Defendant's building has a dynamic exterior, which gives the appearance that the building is swaying.  In contrast, the center swells in Plaintiff's expression are always in the same place, creating a more static design.

Plaintiff's copyright protects the specific way in which Plaintiff chose to express this otherwise non-protectable shape, as achieved through the peculiar shape of its building and the corner balconies.  Plaintiff owns no copyright to the flower shape itself.  To find substantial similarity between the two designs in this case would require a finding that Plaintiff owns a copyright in a concept, i.e. this flower shape, something the Eleventh Circuit has consistently rejected.  *See Oravec*, 527 F.3d at 1227.  The shape is an idea while the building and terraces combine to create a protectable expression.  Defendant's expression of the flower shape is plainly different and does not infringe upon Plaintiff's expression.

### b.  Interior Floor Plan

The expression of the flower shape in these different ways carries through to the buildings' respective floor plans, which are, in turn, their own unique expressions.  The irregularly shaped building and the outward bulge of the bay windows on each of the four sides of Plaintiff's design result in non-standard living spaces with few straight lines.  In

contrast, Defendant's use of a rectangular building follows through to its standard, rectangular-shaped rooms.  These variations create different amounts of space for an architect to design with and for an individual to live in.  The two designs also have different numbers of rooms.  For example, Plaintiff's plan calls for a great room and dining room, while Defendant chooses to create one large great room.  The shapes and numbers of the rooms, even in instances where the location of certain rooms are roughly comparable, are inconsistent across the two designs and create different expressions of the living area.

Additionally, the shapes of the balconies help to create different living spaces. Plaintiff's design limits the balconies to the four corners whereas Defendant's has wrap-around balconies.  In Plaintiff's design, an individual can stand in certain rooms and have an unobstructed view through the window.  The view from all of Defendant's windows is slightly interrupted by the terraces.  These are clearly different expressions and uses of balconies as a design element.

*(2) Use of structures and details*

Had Defendant infringed upon Plaintiff's copyrighted work, further analysis of the different elements of the designs should reveal further similarities, but, in this case, the opposite is true.  For instance, the tops of the buildings are starkly different.  Plaintiff designed its building with a thick crown capping the top of the building, whereas Defendant's building lacks any additional structure at the top.  This difference creates dissimilar expressions.  Plaintiff's cap stops the building while Defendant's design

continues the upward flow of its oscillating wave. A viewer is left with different impressions upon observing the two buildings.

Additionally, the buildings employ different structures at their bases. Plaintiff's plan calls for a substantial covered driveway. Defendant's plan contains only a small driveway covering, not a structure which extends over the driveway in the way that Plaintiff's does. This detail changes the entrance to the buildings and expresses different visions for what effect the entrance should create.

Accordingly, the Court finds Plaintiff has failed to state a claim for copyright infringement because there is no showing of substantial similarity as a matter of law.

## VI. STATUTE OF LIMITATIONS

### A. LEGAL STANDARD

Defendant also moves to dismiss the Amended Complaint as time-barred. In the Eleventh Circuit, dismissal on statute of limitations grounds is appropriate "if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted). The Federal Copyright Act states, "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

There are two tests for when the statute of limitations begins to run in copyright cases. The majority of federal courts use the "discovery rule." *See, e.g., Warren Freedenfeld Assocs., Inc. v. McTigue,* 531 F.3d 38, 44–45 (1st Cir. 2008); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 390–91 (6th Cir. 2007); *Polar Bear*

*Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 706–707 (9th Cir. 2004); *Gaiman v. McFarlane,* 360 F.3d 644, 653 (7th Cir. 2004); *Lyons P'ship, L.P. v. Morris,* 243 F.3d 789, 796 (4th Cir. 2001); *Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir. 1992). The minority follow the "injury rule." *See, e.g., Auscape Int'l v. Nat'l Geographic Soc'y,* 409 F. Supp. 2d 235, 242–48 (S.D.N.Y. 2004). Under the discovery rule, a copyright infringement cause of action accrues when a copyright owner knew or should have known of the alleged infringement. Under the injury rule, the statute of limitations begins to run when the alleged infringement occurred.

The Eleventh Circuit has not explicitly adopted either the majority or the minority position in the civil copyright infringement context.[7] However, in deciding a 42 U.S.C. § 1983 case, the Eleventh Circuit has held, "A federal claim is generally considered to accrue when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Corn v. City of Lauderdale Lakes,* 904 F.2d 585, 588 (11th Cir. 1990). A concurring Eleventh Circuit opinion applied the discovery rule to an infringement action. *Calhoun v Lillenas Pub.,* 298 F.3d 1228, 1236 (11th Cir. 2002) (Birch, J., concurring) ("The limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement."). Moreover, cases in the Southern and Middle Districts of Florida have applied the discovery rule in copyright infringement cases. *Lorentz v. Sunshine Health Prods., Inc.,* No. 09-61529-civ, 2012 WL 3733986, at *5 (S.D. Fla. Aug. 27, 2010); *Thorton v. J Jargon Co.,* 580 F. Supp 2d 1261,

---

[7] In a criminal copyright action the Eleventh Circuit held that the limitations period "begins on the date of the last infringing act." *United States v. Shabazz,* 724 F.2d 1536, 1540 (11th Cir. 1984).

1284–85 (M.D. Fla. 2008); *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007).

Given the weight of authority supporting the discovery rule, and determining it to be the better practice, this Court applies the discovery rule to the instant case and finds that the statute of limitations period began to run when Plaintiff learned of or, in the exercise of reasonable diligence, should have learned of Defendant Arquitectonica's alleged infringement.

"Should have learned," means whether a reasonably prudent person in Plaintiff's position would have become aware of the alleged infringement. *McTigue*, 531 F.3d at 44; *Stone*, 970 F.2d at 1048. "A reasonably prudent person is charged with a duty of diligence." *Luar Music Corp. v. Universal Music Group, Inc.*, 847 F.Supp.2d 299, 309 (D.P.R. 2012) (citing *McTigue*, 531 F.3d at 44). A plaintiff is put on notice and the statute of limitations begins to run once a plaintiff "possesses information fairly suggesting some reason to investigate whether he may have suffered an injury at the hands of a putative infringer." *Id.*

## B. ANALYSIS

Plaintiff pleads, "[O]n or about July 20, 2006, Shubin & Bass, counsel for Arquitectonica, [in the course of representing a different client], sent two faxes to Sieger Suarez attaching copies of the exterior rendering and floor plan drawings prepared by Arquitectonica." D.E. 72, ¶33.  In a footnote, Plaintiff says it does not have a copy of those faxes in its files and that its co-founder, Charles Sieger, has no personal recollection of seeing these faxes. *Id.*, ¶10, ¶33 n.1.  Notwithstanding this lapse in memory, Plaintiff

25

pleads that on July 20, 2006 it was sent copies of Defendant's Regalia plans. Plaintiff was therefore put on notice of any infringement, triggering the statute of limitations, on July 20, 2006. Thus, under the discovery rule, the statute of limitations on Plaintiff's claim ran on July 20, 2009—almost four years before the original Complaint (D.E. 1) was filed on May 31, 2013.

Plaintiff alleges that Defendant "willfully engaged in the acts complained of including, but not limited to, infringing on Sieger Suarez's copyright by copying its plans and designs, transmitting the plans and designs to third parties, and displaying the plans and designs." D.E. 72, ¶64. In an attempt to avoid the clear statute of limitations problem, paragraph 67 of the Amended Complaint alleges Plaintiff only seeks damages for violations which occurred within the three-year period just prior to the filing of the Complaint and for ongoing violations. However, the Amended Complaint does not contain any facts related to any actions taken by Defendant that do not implicate the statute of limitations.

The July 2006 fax put Plaintiff on notice that Plaintiff should investigate whether Defendant infringed upon Plaintiff's copyright and engaged in any of the alleged activities. The simple statement that Plaintiff only seeks damages for violations which occurred within the last three years does not remedy that the Amended Complaint fails to allege any facts other than those which Plaintiff has had notice of since July 2006. There are no redressable violations which occurred in the last three years pleaded in the Amended Complaint.

In its Response to the Motion to Dismiss, Plaintiff attempts to redraft its Amended Complaint. Therein, Plaintiff argues ongoing violations are occurring through the use of a website. However, no such allegation appears in the counts against Arquitectonica.[8] The only actions pleaded in the Amended Complaint are ones for which Plaintiff has been on notice since July 2006.

## V. REMAINING COUNTS AND MOTIONS TO DISMISS

The elements of all remaining counts rely on the existence of an infringement. Counts VIII and IX are for copyright infringement against RBD and GBD, respectively.

Counts II, IV, and VI are each counts for contributory copyright infringement against, respectively, RBD, Regalia Holdings & Paul Murphy, and GBD. Contributory infringement requires that one with knowledge of the infringement induce, cause, or materially contribute to the infringing conduct of another. *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987).

Counts III, V, VII, and X are each counts for vicarious infringement against RBD, Regalia Holdings & Paul Murphy, GBD, and Luis Montello, respectively. Vicarious infringement occurs when a defendant profits directly from an infringement and the defendant has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement. *BUC Int'l Corp. v. Int'l Yacht Council, Ltd.*, 489 F.3d 1129, 1138 n.19 (11th Cir. 2007).

---

[8] In fact, the word "website" does not appear until Count VIII, ¶140, page 29 of the 168-paragraph, 37-page Amended Complaint. When the word does appear it is in the statements "the website for Regalia" or "Regalia's website," with no allegation as to who runs this website.

27

Here, there is no infringement which Defendants RBD and GBD could have committed, no infringing conduct to which any of the Defendants could contribute, and no infringement from which any of the Defendants could profit. Thus, because the Court finds no infringement has occurred, the entire Amended Complaint must be dismissed.

## VI. CONCLUSION

Accordingly, upon a careful review of the record and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** as follows:

1. Defendant Arquitectonica's Motion to Dismiss (**D.E. 81**) be, and the same is, hereby **GRANTED**;

2. Defendant Arquitectonica's Motion to Convert (**D.E. 120**) be, and the same is, hereby **DENIED**;

3. Plaintiff's Amended Complaint (**D.E. 72**) be, and the same is, hereby **DISMISSED with prejudice**;

4. **All pending motions** be, and the same are, hereby **DENIED as moot**; and

5. The Clerk shall **CLOSE** this case.


**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 14th day of February, 2014.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

CC:

**_Counsel for Plaintiff_**
**Glen H. Waldman**
**Jason Gordon**
**Eleanor Trotman Barnett**
Heller Waldman, P.L.
3250 Mary Street
Suite 102
Coconut Grove, FL 33133
305-448-4144

**_Counsel for Defendant Arquitectonica_**
**Jeffrey David Feldman**
**Susan Joy Latham**
Feldman Gale PA
One Biscayne Tower 30th Floor
2 S Biscayne Boulevard
Miami, FL 33131
305-358-5001
Fax: 305-358-3309

**John Kressfield Shubin**
**Juan Jose Farach , Jr.**
**Lauren Gina Brunswick**
Shubin & Bass
46 SW 1st Street
3rd Floor
Miami, FL 33130
305-381-6060
Fax: 381-9457

**_Counsel for Defendants Regalia Beach Developers, Golden Beach Developers, and Luis Montello_**
**Andres Rivero**
Rivero Mestre LLP
2525 Ponce de Leon Boulevard
Suite 1000
Coral Gables, FL 33134
305-445-2500
Fax: (305) 445-2505
Email: arivero@riveromestre.com

<u>***Counsel for Defendants Regalia Holdings and Paul Murphy***</u>
**Elissa Hope Gainsburg**
Pardo Gainsburg, PL
200 SE 1st Street
Suite 700
Miami, FL 33131
305-358-1001
Fax: 358-2001
Email: egainsburg@pardogainsburg.com